# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **SHIRLEY JACKSON,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11CV00001 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **OFFICER RANDALL E. BRICKEY,** | ) | By: James P. Jones |
| **ET AL.,** | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*Richard F. Hawkins, III, The Hawkins Law Firm, PC, Richmond, Virginia, for Plaintiff; Cameron S. Bell, Penn, Stuart, & Eskridge, Abingdon, Virginia, for Defendants.*

The plaintiff contends that she was wrongfully arrested and prosecuted by local law enforcement officers. She sues under 42 U.S.C.A. § 1983 (West 2010) and state tort law theories. Certain of the defendants move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), which I grant in part and deny in part.

I

This case emanates from the arrest of plaintiff Shirley Jackson and other Jackson family members for obstruction of justice and, in her case, felony assault on a police officer. In the early morning hours of January 2, 2009, Shirley Jackson's son, Eric Jackson, was pulled over in the driveway of the family home

for a traffic violation. The incident culminated in the arrests of the plaintiff, her husband, and their two sons. In October 2010, the plaintiff's husband, Larry David Jackson ("Larry Jackson"), filed suit against the arresting officer, Randall E. Brickey, the chief of the Saltville police, Barry Surber, and the Town of Saltville, Virginia. Thereafter, Shirley Jackson filed the present action, asserting similar claims against these defendants and also Derek Breedlove, a deputy with the Smyth County, Virginia, Sheriff's Department.

Officer Brickey, Chief Surber, and the Town now move to dismiss Shirley Jackson's claims under Federal Rule of Civil Procedure 12(b)(6). I accept the plaintiff's allegations as true for the purposes of evaluating the Motion to Dismiss. The motion has been briefed and is ripe for decision.[1]

The specific facts related to Shirley Jackson, based on her allegations, a video and audio recording taken from the dashboard camera in Officer Brickey's police cruiser, and a corresponding transcript prepared by the plaintiff, filed as part of the Complaint, are as follows.

After Eric was pulled over in the family driveway for speeding, he exited his car and met his father on the porch of the home. Eric and Larry Jackson descended

---

[1] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

the steps and approached Officer Brickey's cruiser. Following a brief interaction, Larry Jackson was arrested for obstruction of justice.

Larry Jackson's arrest brought his wife to the door of the family home. Shirley Jackson remained inside, but stood in the partially-opened doorway of the house, observing (and audibly cursing) the events taking place on her driveway. Following Larry Jackson's arrest, Eric was joined by his brother, Larry Christopher Jackson ("Christopher") in the driveway, where the two young men loudly criticized Officer Brickey and threatened him with a future lawsuit. After refusing Officer Brickey's orders to disperse, Officer Brickey pepper sprayed Eric, handcuffed him, and placed him under arrest.

Officer Brickey announced that Christopher was also under arrest, but Christopher fled up the front porch stairs and went back inside the house, standing behind his mother.[2] Officer Brickey then returned to his cruiser and called for backup. While Officer Brickey waited in his car, Christopher entered and exited the house, but remained on the porch.

After backup arrived, which included Chief Surber, Officer Brickey returned to the porch with several unidentified officers and made a second attempt to arrest Christopher. Shirley Jackson again spoke to Officer Brickey through the partially-

---

[2] I note that, although Officer Brickey had told Christopher that he was "under arrest," by virtue of Virginia law, an arrest does not occur until "an officer physically restrains a suspect, or, . . . the suspect submits to the officer's assertion of authority and purpose to arrest." *Bristol v. Commonwealth*, 636 S.E.2d 460, 463 (Va. 2006).

opened doorway, but physically blocked entry, repeatedly directing officers to leave her property, and insisting that Officer Brickey get a warrant if they wished to arrest Christopher. The defendants assert that during this conversation, Christopher stood behind his mother, taunting Officer Brickey by poking his finger and/or arm through the doorway. When Officer Brickey attempted to seize Christopher by the exposed appendage, Shirley Jackson slammed the door, allegedly hitting Officer Brickey's arm. Officer Brickey then retreated, telling her, "You'll go too."

After some period and further discussion with a girlfriend at the scene, Christopher eventually complied with law enforcement and exited the home where he was arrested. During this arrest, one of the other officers, now identified as Deputy Breedlove, asked Brickey in reference to Shirley Jackson, "Who's the woman? Does she need to go?"[3] Officer Brickey replied, "I don't know. She threw the door shut on me as I reached in there to grab him." Deputy Breedlove replied that her actions also constituted obstruction of justice, and the officers agreed "to go get her."

Several officers returned to the porch for a third time and told Shirley Jackson that she was also under arrest for obstruction of justice, despite her protestations that she had never left her house. Officer Brickey, along with at least

---

[3] The facts related to Deputy Breedlove were originally attributed to a Saltville police officer, Landon Smith, in Larry Jackson's Complaint.

one other unidentified officer, advised Shirley Jackson multiple times that by closing the door on Officer Brickey's arm she obstructed justice. Although she admitted to "jerk[ing] the door shut," she also stated that she did so, "[be]cause you scared me."

Shirley Jackson first resisted being arrested without a warrant, but Officer Brickey told her, "You can either go [without a warrant], or we'll come back and drag you out of here, whichever one you want. And these officers will wait until I get the warrant on it. Which one do you want? So you can go with us now, or we'll come back and get you. If we come back and get you, stepping back inside your house is not gonna help you." Shirley Jackson told the officers not to threaten her, and eventually agreed to be arrested without a warrant.

While waiting for Shirley Jackson to get dressed, in a conversation in the Jackson driveway that was caught on the audio recording, Officer Brickey recounted his version of the events to his fellow officers. As to Shirley Jackson, Officer Brickey told them that she "jerked the door shut on my hand" and "slammed the door on my arm" while "they had the door open" after Christopher ran back into the house. Several of the officers confirmed that Shirley Jackson's actions constituted obstruction. One officer opined that it was also an assault on a police officer. Shirley Jackson finally exited the home, where she was handcuffed and arrested.

Charges for obstruction of justice stemming from the above events went to trial in the Smyth County General District Court. Larry Jackson and his sons were convicted and appealed their convictions to the Circuit Court. The court granted Shirley Jackson's motion to strike and dismissed the obstruction of justice charge, but it certified the felony assault charge against her to the Smyth County Circuit Court.

During pre-trial motions the presiding judge of the Circuit Court watched the same videotape of the events provided here. Shirley Jackson alleges that the judge stated he was "shocked" and "appalled" by the police conduct, and chastised the assistant Commonwealth's Attorney for proceeding with the case to trial. She contends that these comments prompted the prosecution to file a nolle prosequi motion as to the remaining assault charge against her.

II

I turn first to Shirley Jackson's claims under § 1983 related to her arrest. Because liability under § 1983 attaches differently as to each defendant based on their respective roles in the arrest, I discuss each separately.

A

Officer Brickey moves to dismiss based on the doctrine of qualified immunity.

Police officers are entitled to qualified immunity from § 1983 liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an *immunity from suit* rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Officer Brickey contends that, even accepting the Complaint's allegations as true, Shirley Jackson's actions provided probable cause to arrest her for obstruction of justice and assault. He additionally argues that, in any event, a reasonable police officer in his position would have believed that probable cause existed to support her arrest.

Specifically, Officer Brickey points out that, although Shirley Jackson stayed in the home, she used profanity and challenged the authority of the officers throughout the evening. Moreover, he alleges that Shirley Jackson shut his hand or arm in the door of the home as he attempted to grab Christopher's arm to arrest him. Officer Brickey asserts that this action constituted assault on a police officer and actually obstructed him from taking Christopher into custody.

Because the probable cause inquiry is informed by the elements of the offense, I first begin by examining the Virginia statutes and case law on obstruction of justice and assault.

-7-

The Virginia obstruction of justice statute provides in pertinent part:

> A. If any person without just cause knowingly obstructs . . . any law-enforcement officer . . . in the performance of his duties as such or fails or refuses without just cause to cease such obstruction when requested to do so by such . . . law-enforcement officer, . . . he shall be guilty of a Class 1 misdemeanor.
>
> B. Except as provided in subsection C, any person who, by threats or force, knowingly attempts to intimidate or impede . . . any law-enforcement officer . . . lawfully engaged in his duties as such, or to obstruct or impede the administration of justice in any court, is guilty of a Class 1 misdemeanor.

Va. Code Ann. § 18.2-460 (2009).

Although the Virginia statute appears on plain reading to prohibit any "obstruction" of an officer without qualification, the Virginia courts have interpreted restrictions on the statute's application. *See Wilson v. Kittoe*, 229 F. Supp. 2d 520, 528 (W.D. Va. 2002), *aff'd*, 337 F.3d 392 (4th Cir. 2003). An obstruction charge incorporates a specific intent component and requires that the offender actually hinder or obstruct the officer in the performance of his duties. *Ruckman v. Commonwealth*, 505 S.E.2d 388, 389 (Va. Ct. App. 1998). Furthermore, peaceful verbal criticism of a police officer does not rise to the level of conduct criminalized under the statute. *See Kittoe*, 229 F. Supp. 2d at 528.

Virginia's assault law, while statutorily proscribed and regulated, is derived from common law. *Carter v. Commonwealth*, 594 S.E.2d 284, 287 (Va. Ct. App. 2004). Criminal assault is defined as an attempt to commit a battery or to place

another in reasonable apprehension of receiving an immediate battery.[4] *Carter*, 594 S.E.2d at 288. One may commit an assault even though the victim is not aware of or frightened by any acts directed at him, provided the perpetrator had the specific intent to commit a battery and commits an overt act in furtherance of that intent. *Adams v. Commonwealth*, 534 S.E.2d 347, 350 (Va. Ct. App. 2000). Although typically a misdemeanor, Virginia's statute makes it a felony to assault a police officer acting in the performance of his public duties. Va. Code. Ann. § 18.2-57(C) (2009).

Considering the facts alleged by Shirley Jackson as true, I find that she has provided sufficient allegations to survive a motion to dismiss. As I similarly noted in Larry Jackson's case, the plaintiff's verbal challenges — even if profane and disrespectful — do not provide conduct supporting an arrest for obstruction of justice. *See Jackson v. Brickey*, No. 1:10CV00060, 2011 WL 652735, at *6-7 (W.D. Va. Feb. 11, 2011). Likewise, a purely verbal threat cannot constitute an assault. *Harper v. Commonwealth*, 85 S.E.2d 249, 255 (Va. 1955). ("[N]o words whatever, be they ever so provoking, can amount to an assault.") (citation and quotations marks omitted).

---

[4] A battery offense is defined as the actual infliction of corporal hurt on another, willfully or in anger, whether by the party's own hand, or by some means set in motion by him. *Jones v. Commonwealth*, 36 S.E.2d 571, 572 (Va. 1946).

The issue, therefore, is whether Shirley Jackson's overt physical actions constituted conduct supporting probable cause for either offense.

The defendants assert that closing the door on Officer Brickey's arm was an action that actually obstructed Officer Brickey's duties and additionally constituted an assault on a police officer. They cite *United States v. Santana*, 427 U.S. 38, 39 n.1, 41 (1976), for the principle that an individual standing in an open threshold may be lawfully arrested without a warrant, because remaining in a doorway publicly exposes the individual such that she is no longer afforded Fourth Amendment protection. Because seizing Christopher at the doorway would have been permissible, the defendants argue, Shirley Jackson's obstructionist actions prevented Officer Brickey from carrying out his lawful duties.

Shirley Jackson refutes this version of events, insisting that Christopher was fully inside the house and that she unambiguously denied the officers entry to make the arrest. She insists that even if Officer Brickey had authority to eventually arrest Christopher, he did not have probable cause sufficient to seize Christopher from the home without a warrant. Shirley Jackson emphasizes that because the obstruction offense was a misdemeanor and no exigent circumstances were present, Officer Brickey did not have legal authority to justify his aggressive action. *See Welsh v. Wisconsin*, 466 U.S. 740, 747 n.6 (1984) (noting that the defendant's warrantless arrest in his home violated the Fourth Amendment where

defendant was arrested for an offense that, at its most serious, constituted a misdemeanor).

By reaching into the Jackson home in an attempt to seize Christopher without a warrant, Shirley Jackson argues that Officer Brickey clearly violated both her and Christopher's Fourth Amendment rights. Thus, she argues that closing the door was a reasonable effort to resist unconstitutional action. *See United States v. McGraw*, 920 F.2d 224, 229 (4th Cir. 1990) (noting that opening a door halfway does not voluntarily expose an individual to the public to the same degree as the defendant in *Santana*). She further contests whether her actions evinced the specific intent required to make out the charges of obstruction and assault. Finally she disputes whether the door was actually shut on Officer Brickey's arm, or whether it was simply closed in front of his face.

This discussion reveals that substantial disputes of fact exist between the parties. Under such circumstances, I find that dismissing the § 1983 count against Officer Brickey would be inappropriate at this time.

B

Shirley Jackson also asserts her § 1983 claims against Saltville's chief of police, Barry Surber. In contrast to Larry Jackson's companion case, Chief Surber had arrived on the scene as part of Officer Brickey's backup and was present when the events related to Shirley Jackson took place. She argues that the responding

-11-

officers' discussions, for which Chief Surber was allegedly a participant and/or observer, prompted her arrest. Additionally, she argues that Chief Surber was present for Officer Brickey's unsuccessful attempt to seize Christopher at the doorway. Thus, in this case, Shirley Jackson's contention is that Chief Surber may be held directly liable for his participation in her arrest. Under this legal theory and the facts as presented at this time, this argument carries more weight.

However, to the extent that Shirley Jackson attempts to recycle inapposite charges of general deficiencies within the Saltville Police Department under Chief Surber's supervision, I find that these allegations are insufficient to meet *Iqbal* standards. *Jackson v. Brickey*, 2011 WL 652735, at *7-9. I will grant the defendants' motion to dismiss Chief Surber for § 1983 claims based in these theories of liability, but allow the plaintiff's claims on a theory of direct liability to move forward.

C

The Town moves to dismiss for failure to state a claim under § 1983 for municipal liability.

The requirements for imposing liability on a municipality under § 1983 are strict. *Jordan v. Jackson,* 15 F.3d 333, 338 (4th Cir. 1994). In order to establish municipal liability under § 1983, the plaintiff must prove the existence of an official policy or custom that proximately caused the deprivation of the plaintiff's

rights. *See Bd. of the Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 425 (1997); *Spell v. McDaniel*, 824 F.2d 1380, 1385-87 (4th Cir. 1987). Although such a claim is not subject to a heightened pleading standard, to survive a motion to dismiss, the plaintiff must provide factual allegations giving rise to a plausible entitlement of relief under municipal liability's strict standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In the present case, the Complaint as to the Town is limited to naked assertions devoid of factual enhancement and allegations of unrelated wrongdoings by the Saltville Police Department. These allegations are insufficient to meet federal pleading standards for municipal liability. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010).

For these reasons, I will grant the request to dismiss the Town.

D

Finally, Shirley Jackson asserts multiple state law tort claims against Officer Brickey pursuant to this court's supplemental jurisdiction. These include claims of assault and battery, false imprisonment, and malicious prosecution. Officer Brickey has not contested the sufficiency of the pleading of the assault and battery claim. He does challenge those for false imprisonment and malicious prosecution, on the basis that Shirley Jackson's arrest was supported by probable cause.

I will reject the request to dismiss Shirley Jackson's pendent state law claims against Officer Brickey for the same reasons that I rejected, at this stage, his qualified immunity defense.

E

The Motion to Dismiss also requests that I dismiss Jackson's claims for punitive damages and injunctive relief. Punitive damages are available under § 1983 and Virginia tort law only where the plaintiff shows a reckless or callous indifference to the federally protected rights of others, *Smith v. Wade*, 461 U.S. 30, 56 (1983), or actions that are so wanton or reckless as to manifest the willful disregard of the rights of others. *Evans v. Schuster*, 16 S.E.2d 301, 303 (Va. 1941). Given the liberal pleading standards for demonstrating malice under Federal Rule of Civil Procedure 9(b) and the facts as currently presented, I deny the motion at this stage. I will dismiss, however, the plaintiff's claim for injunctive relief, because the pleadings do not show why such a remedy would be indicated.

III

For the foregoing reasons, it is **ORDERED** as follows:

1. The Motion to Dismiss (ECF No. 12) is GRANTED in part and DENIED in part;

2. The Motion is DENIED as to the plaintiff's claims against Officer Randall E. Brickey;

3. The Motion is GRANTED as to the plaintiff's claims against the Town of Saltville;

4. The Motion is DENIED as to any claims against Chief Barry S. Surber based on a theory of direct liability, but GRANTED as to any claims based in his official capacity or on a theory of supervisory liability;

3. The Motion is DENIED as to the plaintiff's claim for punitive damages; and

4. The Motion is GRANTED as to the plaintiff's claim for injunctive relief.

ENTER: May 20, 2011

/s/ James P. Jones
United States District Judge